# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

  **Appellant-Defendant,**

v.           //   CIVIL ACTION NO. 1:07CV79
                  (Judge Keeley)

**MARIANNE REGINA BROWN,**

  **Appellee-Plaintiff.**

## ORDER AFFIRMING BANKRUPTCY COURT DECISION

The United States has appealed the decision of the United States Bankruptcy Court for the Northern District of West Virginia discharging Marianne Regina Brown's ("Brown" or the "Debtor") federal student loans. For the reasons that follow, the Court **AFFIRMS** the bankruptcy court's decision.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

Brown is a 50 years old married woman who resides with her husband and two sons, ages 30 and 27. Her husband performs odd jobs and sells firewood to contribute income to the family's household expenses.

Brown attended Fairmont State University from the fall of 1996 through December, 2003, when she graduated with a degree in finance

and management. She financed her education with student loans in the approximate amount of $36,300, and also incurred approximately $14,100 in Parent Plus loans to help finance her sons' college education.

While Brown attended Fairmont State University, she was employed part-time in the campus computer lab, where she earned minimum wages. Since graduating, she has held various jobs, including at Target, Exxon, and Subway, where she has earned $6.00 per hour while working fewer than 40 hours per week. After her employment at Subway ended, Brown was unemployed for several months while she applied for numerous positions with various banks and retail stores. After being rejected for lack of experience and poor credit ratings, in January 2006, she ultimately obtained her current position as a customer service representative with a telemarketing center. She earns $8.50 per hour and works 40 hours a week with an average net monthly income of $975. Brown submitted a copy of her check register for the three month period preceding trial to the bankruptcy court. According to the bankruptcy court's analysis of the check register, her expenses averaged $1,144 monthly, which exceeds her income by $169 per month. In fact, Brown's check register demonstrates that her sons provided funds to pay the monthly expenses during the three month period of time preceding the bankruptcy trial.

On June 21, 2007, the bankruptcy court entered an order discharging Brown's student loans. The United States appealed that decision and filed a brief on June 28, 2007. The Debtor filed a response on July 11, 2007 and the United States filed a reply brief on July 23, 2007. This matter is fully briefed and ripe for decision.

**II.**

**STANDARD OF REVIEW**

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The Bankruptcy Court's application of the law is reviewed *de novo*, but its findings of fact may not be set aside unless they are clearly erroneous. In re Biondo, 180 F.3d 126, 130 (4th Cir. 1999). "A finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quotation omitted). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." Id.

In order to discharge a student loan obligation pursuant to 523(a)(8) of the Bankruptcy Code, a debtor must demonstrate that

excepting such debt from discharge would impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8). In order to establish undue hardship, the Fourth Circuit has adopted the Second Circuit's three-prong <u>Brunner</u> test, requiring that a debtor demonstrate: (1) she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay her student loan obligation; (2) additional circumstances exist indicating that her state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) she has made good faith efforts to repay the loans. <u>In re Frushour</u>, 433 F.3d 393, 400 (4th Cir. 2005)(citing <u>Brunner v. N.Y. State Higher Educ. Servs. Corp.</u>, 831 F.2d 395, 396 (2d. Cir. 1987)).

### III.

### LEGAL ANALYSIS

*A. Minimal Standard of Living*

The first issue before the Court is whether the bankruptcy court erred in finding that the Debtor cannot maintain a "minimal" standard of living for herself if forced to repay her student loan obligation.[1] The bankruptcy court determined that Brown cannot maintain a minimal standard of living for herself, even if she is

---

[1] The Debtor has no dependants, therefore the analysis of the three-pronged test will focus on the Debtor exclusively.

not forced to repay her student loan obligation. It found that her average monthly expenses were $1,438, while her average monthly income was only $1,083. The bankruptcy court also analyzed her expenses and found that each was necessary and nonfrivolous. Notably, the United States did not object to the bankruptcy court's findings on this prong.

After reviewing the detailed analysis of the bankruptcy court and absent objection, this Court finds that the bankruptcy court's factual findings supporting its legal conclusion that the Debtor cannot maintain a minimal standard of living for herself if forced to repay her student loan obligation are not clearly erroneous. Conducting a *de novo* review of the application of these facts to law, this Court affirms the finding of the bankruptcy court that the Debtor has met the first prong of the Brunner test.

*B. Certainty of Hopelessness*

The second issue before the Court is whether the bankruptcy court erred in finding that additional circumstances exist that show that the Debtor's current state of affairs is likely to persist for a significant portion of the repayment period. This is commonly known as the "certainty of hopelessness" prong. Frushour, 433 F.3d at 401.

The United States argues that Brown has failed to show any evidence of such additional circumstances. It contends that she is

healthy, well-educated and has no dependants; thus, it is highly unlikely that she could demonstrate additional circumstances giving rise to a certainty of hopelessness.

The opinion of the bankruptcy court extensively analyzed the evidence that persuaded it Brown had met the second prong of the <u>Brunner</u> test. For example, it found that, although her husband's income will increase once he begins receiving Social Security retirement benefits, Brown's income will decrease substantially when she receives Social Security; thus offsetting any gains to the household. The bankruptcy court found that there was no basis to believe that Brown's husband or sons will ever be able to contribute more to the household's income. It also found that Brown's only vehicle is a 1996 Pontiac Grand Am, which has an odometer reading of 155,000 miles. Of necessity, it concluded, the Debtor will have an additional expense of replacing that vehicle in the near future.

The bankruptcy court found that Brown is working 40 hours per week at $8.50 per hour plus any available overtime, which is more than double her pre-education earnings. Despite this progress, she is still unable to make ends meet. The bankruptcy court credited Brown's testimony that her opportunities for advancement within her company were limited and that she has been unable to secure more lucrative employment, despite diligent efforts. Based on its

factual findings, the bankruptcy court concluded that the Debtor's dire financial circumstances were likely to continue indefinitely because she was "trapped in a cycle of poverty." It, therefore, found that she had met the second prong of the Brunner test.

The facts found by the bankruptcy court indicate a bleak future for the Debtor who, even after completing school and doubling her income, cannot meet her necessary monthly expenses. Prospectively, those facts indicate that this state of affairs is likely to continue indefinitely. The bankruptcy court's findings are not clearly erroneous. Therefore, upon *de novo* review of the application of these facts to law, this Court finds that the Debtor has met the second prong of the Brunner test.

*C. Good Faith*

The third issue before the Court is whether the bankruptcy court erred in finding that Brown has made good faith efforts to repay her loans. This third prong looks to "[t]he debtor's efforts to obtain employment, maximize income, and minimize expenses." Frushour, 433 F.3d at 402. Furthermore, the debtor's inability to repay the student loans must be a result of factors beyond the debtor's control. Id.

The United States contends that Brown has not made good faith efforts to repay her loans because she has not made any payments at all on those loans. It also argues that she has failed to explore

7

other options, such as special repayment programs, to make her debt more manageable.

The bankruptcy court, however, made numerous factual findings, which were not clearly erroneous, that Brown has made repeated and credible attempts to obtain employment to maximize her income. It found that her age, lack of experience, and poor credit ratings have prevented her from obtaining a position that would enable her to fully utilize her degree. The bankruptcy court also found that Brown has done everything possible to minimize her expenses, such as purchasing all of her clothing from Goodwill.

Despite such good faith efforts, the bankruptcy court concluded that Brown's budget remained unbalanced and she was unable to meet her necessary living expenses. In accord with Fourth Circuit precedent, it held that while a debtor's effort to seek out loan consolidation options that make the debt less onerous is an important component of the good faith inquiry, that fact is not always dispositive. Frushour, 433 F.3d at 402. Based upon its detailed analysis of the Debtor's finances, including finding that her entire income is reserved for necessities, such as food, clothing and transportation, the bankruptcy court concluded that Brown is unable to make even the most minimal of payments. Therefore, it concluded that any attempt to negotiate a reduced

repayment schedule would have "constituted an exercise in futility."

Applying the law *de novo* to these facts, this Court concludes that Brown has demonstrated good faith efforts to repay her loans. In her dire economic situation, which is expected to last indefinitely, she would not be able to afford any type of loan repayment. Thus, any attempt at debt reconsolidation or restructuring would be futile. Interestingly, even though the United States argues that the Debtor should have explored deferment, forbearance, or alternative repayment options, it has offered no evidence that she would even qualify for any such programs.

## IV.

### CONCLUSION

For the reasons stated, the Court **AFFIRMS** the Bankruptcy Court's decision of June 21, 2007, and **DISMISSES** this case from its docket.

It is so **ORDERED.**

The Clerk is directed to forward copies of this Order to the Clerk of the United States Bankruptcy Court for the Northern District of West Virginia and to counsel of record.

DATED: November 21, 2007.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE